## IN RE ADRIAANS.

APPEALS; ATTORNEYS; DISBARMENT OF.

1. An appeal will lie to this court from an order of the supreme court of the District of Columbia disbarring a member of its bar after trial of charges made against him, and directing his name to be stricken from the roll of its attorneys.

2. It will be presumed that the grantors in a deed absolute on its face and duly acknowledged before a notary public, as shown by the notary's certificate, knew the instrument was a deed, and not a power of attorney. (Following *Ford* v. *Ford,* 27 App. D. C. 410.)

3. The power to disbar an attorney ought always to be exercised with great caution and only in clear cases.

4. Where, on an appeal by an attorney from an order of disbarment of the lower court, it appeared, among other things, that the charges upon which he was disbarred were based upon a decree against him in an equity cause passed about twelve years before, requiring him to reconvey property to which the complainants had given him a deed in the belief that it was a power of attorney, and to pay the costs of the suit; but that the pleadings and decree in the cause faile to affirmatively show fraud, and were not inconsistent with the

that the relief was granted upon the ground of mistake; and it also appeared that, during such period of twelve years the complainants and the defendant's attorney had died, the judge who had presided had retired, and the statute and rules of court under which the proceedings for disbarment were conducted were enacted,—it was *held*, reversing the order, that the proof was legally insufficient to justify disbarment.

No. 1672. Submitted November 8, 1906. Decided January 8, 1907.

HEARING on an appeal from an order of the Supreme Court of the District of Columbia disbarring the appellant from membership of the bar of the attorneys and counselors of that court, and directing that his name be stricken from the roll of attorneys and counselors thereof.        *Reversed.*

## STATEMENT OF THE CASE.

On November 24, 1905, there was filed in the court below a report of the committee on grievances of the Bar Association of the District of Columbia charging John H. Adriaans with misconduct in his office of attorney, and with unprofessional conduct involving moral turpitude. The report, containing three spcifications of misconduct, was printed in the record on this appeal.

On November 27, 1905, a rule was issued by the court below setting out the fact that the committee on grievances appointed by the court had filed charges accusing the appellant "of misconduct as an attorney, and with unprofessional conduct involving moral turpitude," and commanding the appellant to show cause on or before January 5, 1906, why he should not be disbarred.

On January 4, 1906, the appellant filed his answer to the rule to show cause.

In his sworn answer the appellant, not waiving the benefit of the statute of limitations, specifically denied having practised any fraud or misrepresentation, or that the decree passed inconsistent with his integrity, and explained the trans-

action and the equity suit out of which the charges grew. Subsequently, on January 24 and 30, 1906, hearings were had before the court in general term, at which the appellant appeared in proper person and argued his case in his own behalf.

On February 5, 1906, the appellant, by counsel, filed a motion for a rehearing upon the ground that he had expected to be represented by counsel, and that his former counsel had disappointed him. This motion was supported by the affidavit of the appellant and of his former counsel, but was overruled on February 6, 1906.

On February 14, 1906, the court met, and, after an oral opinion delivered through the chief justice, entered an order disbarring the appellant, Mr. Justice Wright dissenting.

On February 24, 1906, the appellant filed a petition for a rehearing which was denied.

On February 26, 1906, the appellant, by his counsel, moved the court to amend and amplify its order of disbarment "by including therein a finding or findings of fact under the several specifications of the charges filed herein, and the findings of the court whether the respondent be guilty or innocent respecting the charges contained in each specification, or in what manner each specification has been disposed of by the court." This motion was overruled on March 10, 1906.

On February 14, 1906, the appellant noted an appeal from the order of disbarment. During the course of the proceedings he reserved a number of exceptions to the rulings of the court.

The further material facts will be found stated in the opinion of the Court.

*Mr. James S. Easby-Smith* for the appellant.

The Committee on Grievances of the Bar Association, *Messrs. Wm. F. Mattingly, Mr. Henry P. Blair, Mr. J. J. Darlington, Mr. A. H. Bell,* and *Mr. A. A. Hoehling, Jr.,* filed a brief in opposition to the appeal.

1. The five justices below, who united in the opinion of the court after a careful and painstaking examination of all the papers before them, which was warranted by the gravity of the matter under consideration, were clearly justified ·in reaching the decision, from the evidence furnished by the records of their own court, that the question of fraud upon the ignorant and illiterate Fry was involved in the equity cause, and that by the judgment of their own court that issue had been determined adversely to the respondent Adriaans; and it is submitted that this court would be justified in reversing the opinion of the court below on the question of fact only in the event that the law of the case had been grievously misapplied.

If trial tribunals and appellate courts are loath to disturb the findings of juries on questions of fact, is not the determination of such questions of fact by judges sitting to hear both the law and the facts of almost controlling force when based on the records of the court so sitting? The pleadings, testimony, and all the proceedings in the equity cause were offered in evidence without objection, and were undoubtedly competent in so far as they bore on the issue heard and decided in that cause. And it is respectfully submitted that the determination of the court below that the decree in that cause was final in its nature, and conclusive as to the question of the proof of the fraud charged in the bill, is a correct one, and their further determination, that the issue of fraud in the equity cause cannot now be collaterally impeached in this proceeding, is also correct.

2. It would seem that the remedy, if the respondent has any, is by mandamus to compel the restoration of his name to the roll of attorneys; not by appeal. *Ex parte Bradley,* 7 Wall. 364; *State* v. *Kirk,* 12 Fla. 278; *State* v. *Maxwell,* 19 Fla. 31; *Ex parte Wall,* 107 U. S. 265; *Re Adriaans,* 17 App. D. C. 39; *Bradley* v. *Fisher,* 13 Wall. 335; *Ex parte Bradley,* 7 Wall. 364.

3. The issue in all the cases is not a question of punishment of the individuals, but the protection of the public from im-

position. *Re O——,* 73 Wis. 602; Cases already cited; *Re Wool,* 36 Mich. 299.

Mr. Justice McComas delivered the opinion of the Court:

John H. Adriaans has appealed from an order of the supreme court of the District of Columbia disbarring him from further membership of the bar, and directing his name to be stricken from the roll of attorneys. This order was passed on February 14, 1906, and it was passed because the court believed Adriaans had committed a certain offense on March 30, 1894. We appreciate this solicitude of the court concerning the reputation of members of the bar, and should not hinder them in purging the roll of attorneys. The disbarment of Adriaans for misconduct which happened about twelve years before is most unusual. The majority of the justices of the supreme court who concurred in the order of disbarment appear to appreciate this, for they say that under ordinary circumstances the lapse of time would cause the court to seriously consider the long delay in filing the charges. The record discloses no extraordinary circumstance which persuaded the court to ignore this long delay. The court do say that, if Adriaans was guilty of the specific offense charged to have been committed twelve years before, he has not offered proof of any amendment of his conduct since. We are more impressed by the absence from the record of charges of misconduct since. Here this charge stands alone. The chief justice, however, speaking for the court, concludes: "After the length of time that has elapsed, which, as I have said, would make the court hesitate to take action, we find the same position reiterated in the testimony in this cause. There is no suggestion in the proof that whatever he had lost in professional standing by reason of that decree he had regained by his subsequent conduct. Therefore we do not feel that this court, important as the case may be to the respondent, should consider the length of time which has elapsed without any proceeding being taken for his disbarment." He also

mentions two other charges upon which the court did not pass.

The majority of the supreme court has based its action upon a single transaction which occurred long ago, and we are limited to that. We omit many questions urged by the respondent's counsel, because we deem discussion of them unnecessary. We do not doubt the respondent's right of appeal in this case.

We appreciate the proper anxiety of the supreme court to maintain the respectability of its bar, and, as Chief Justice Marshall has said, power and discretion to achieve this end ought to reside in the court, and no other tribunal can decide in a case of disbarment so properly as the court itself; and this revising tribunal appreciates the delicacy of reviewing the court below in this proceeding.

The charge of misconduct by Adriaans on account of which the supreme court disbarred him is thus specifically stated by the committee:

"That on, to wit, the 30th day of March, A. D. 1894, by misrepresentations to and fraud practised upon one Wesley Fry, an illiterate negro, between whom and himself he had established the relation of client and attorney, said Adriaans procured the execution by said Fry of a conveyance in fee to himself of certain real estate, the property and possession of said Fry, upon the false and fraudulent representation of said Adriaans, at the time made to said Fry, that the said conveyance was merely a power of attorney authorizing the said Adriaans to sell real estate therein described for the benefit and advantage of said Fry.

"That on the 9th day of April, A. D. 1894, a proceeding was instituted in this court, at its special term in equity, by the said Wesley Fry and others against the said Adriaans, being equity cause No. 15,468 of the dockets of this court, in substance charging the said Adriaans with the fraudulent act above stated. That on final hearing upon the pleadings and evidence the charge of the complainant, Wesley Fry, against the said Adriaans, was, by the court, sustained and a reconveyance to said Fry by said Adriaans was decreed by the court, the said

Adriaans being adjudged to pay the costs of suit. And the said decree remains unreversed and unappealed from."

The record shows that the only evidence offered in support of this charge of misconduct was the original bill in equity filed in the supreme court of the District of Columbia in equity cause No. 15,468, filed April 9, 1894, wherein Wesley Fry and Elizabeth, his wife, are complainants, and John H. Adriaans defendant, and the answer of Adriaans to the bill, filed May 12, 1894, and the decree passed in said cause October 29, 1894. It appears from the record that Fry and wife are dead, and that Mr. Mills Dean, counsel for Adriaans in that proceeding, is dead; the eminent justice who heard the cause and passed the decree has retired and is still living; the new Code and the rules of court whereunder this proceeding for disbarment was conducted were enacted long after the time of the offense alleged against this respondent; and if, as has been argued, the acts alleged to have been committed by the respondent amounted to a crime, the prosecution for such crime would long since have been barred by the statute of limitations. During the years which have elapsed, the membership of the supreme court of this District has been completely changed. The court as then constituted took no action. Neither the eminent justice who passed the decree nor the court in general term took notice of this alleged misconduct. The supreme court of this District as then constituted was quite solicitous to maintain the reputation of its bar.

The associate justice, who dissented from the order of disbarment we here consider, strongly argued that the bill, answer, and decree failed to support the specification of misconduct by Adriaans, and the majority of the court only claim for this badly framed bill that it in substance charges fraud. The court's reference in its opinion to the testimony in that equity cause relates to things outside the record before us, and so also is the comment upon inconsistency in Adriaan's statement upon testifying in his own behalf at this hearing when compared with his testimony in said equity cause. His present testimony is not in conflict with his answer filed in the equity cause.

We have examined with care the bill, answer, and decree. The bill does not properly set out a charge that Adriaans by fraud and misrepresentation procured the deed which the decree annuls. The bill only states a conclusion of law. It alleges that Adriaans obtained the deed by fraud, but fails to state the acts which constituted fraud. The disbarment of an attorney is a serious punishment. The right to exercise his profession should not be lightly taken from an attorney. When the court determines to disbar an unworthy member of an honorable profession it ought to require the clearest legal proof. The whole proof in the case before us, apart from Adriaan's own statement, is to be found in this bill, answer, and decree in equity. The decree orders Adriaans to reconvey the property conveyed by Fry to Adriaans by the deed referred to in the bill of complaint, and orders Adriaans to pay the costs of the suit. This decree suggests things unfavorable to Adriaans; it states nothing; it does not exclude mistake or other grounds which might exonerate Adriaans. The answer denies fraud or deceit, and asserts that, upon the suggestion of want of proper understanding by the complainants, the defendant offered to reconvey the land to them if they would pay him the costs incurred. The answer does not deny the right of complainants to a decree of reconveyance because of misunderstanding or mistake, but it does deny any fraud on defendant's part. Therefore, if the order of disbarment is to be affirmed, it must be affirmed upon the allegations of this bill in equity, which are held to be established by the decree.

We agree with the associate justice who dissented, that this bill omits to allege that Adriaans was then an attorney at law, or that the relation of attorney and client existed between him and the complainant, or to state that Adriaans made any representation of fact, and that it was false, and that he knew it was false, or that such representation influenced the complainant to sign the deed which he asks to be set aside, and which the answer consents may be set aside upon the ground of mistake. The allegations in the bill are that the complainant requested Adriaans to sell certain lots for him, which Adriaans agreed to

do, and thereupon requested the complainant to sign a paper authorizing such sale, and that the paper was never read over to the complainant and his wife, who were unable to read or write, and that they supposed the paper was a power of attorney. Allegations, however, of any representations false and fraudulent, or representations of any sort, by Adriaans, are lacking. It is alleged that, when the complainant discovered that he had made a conveyance of the lots to Adriaans, the complainant with his attorney called upon Adriaans, and that Adriaans, when accused by said attorney of fraud and deceit, assaulted the attorney and ordered him and the complainant out of his office. It is further alleged that the complainant supposed this deed was merely a power of attorney for the sale of a lot, and the same was so represented to them by Adriaans, but here the representations made by Adriaans are again omitted. The last allegation is "that the execution of said deed was procured by fraud and misrepresentation on the part of said defendant." Here, again, the acts and declarations which amounted to fraud are omitted. The deed mentioned is not properly made part of the bill; it is in the record, however. The presumption from the notary's certificate is that both complainants knew, the wife more fully, that the paper was a deed, and not a power of attorney. *Ford* v. *Ford,* 27 App. D. C. 410. After twelve years we must be careful not to assume what the evidence failed to prove.

In the hearing before the supreme court of this District Adriaans testified that, to enable him to sell the lots and settle indebtedness thereon, the parties to the deed intended that it should be an absolute deed as to third parties, but, *inter partes,* Adriaans was to be accountable to the complainant for the proceeds of sale, and to turn over to him any surplus after payment of debts. We omit to consider several answers of Adriaans to questions put by counsel, claiming to show inconsistency between his testimony in the equity case and his testimony before the court upon this proceeding, because the former testimony is not before us to enable us to compare such statements. Nothing in the record indicates that these items are material.

The justices of the court, anxious to remove from the bar a member they deemed unworthy, and solicitous to deal with his case justly, have, in our opinion, attributed undue weight to this bill, answer, and decree in equity. We are constrained to say that the proof is legally insufficient. The false and fraudulent representations which are considered by the court serious enough to disbar this respondent, we do not find in the bill; and the decree thereon, adverse to the respondent, makes no such suggestion, while the admissions of the answer admit a probability of mistake and misunderstanding as the basis of the decree. The charge of misconduct upon the specification of misconduct whereon the court passed the order appealed from is not supported by the proof. We naturally hesitate to review the finding of the court below, but we are convinced that the evidence here is not legally sufficient to justify the disbarment of this respondent. Though we are disinclined to interfere with the order of the supreme court of this District in a case of this character, we are unable to resist the conclusion that these equity proceedings, after twelve years' delay to make this charge, as a ground for disbarment of this attorney, are not such clear and definite proof of the misconduct alleged as to justify us in affirming this order. It may well be that the court was thereby impressed that the respondent lacks the moral qualities which fit him to remain on the roll of attorneys. The transaction is suspicious, so suspicious that, if subsequent offenses had been proven, the proceedings in this equity case would be entitled to more consideration.

The power to disbar ought always to be exercised with great caution and only in clear cases. No criminal proceedings on this account were commenced against this respondent, and after this long delay we cannot agree with the court that the matters disclosed by this record suffice to sustain this order. This is not a criminal proceeding, but such a charge should be supported by a preponderance of satisfactory evidence. The case should be clear and free from doubt. The career of an unworthy member of the bar is apt to reveal misconduct more recent

than in this case, where the proof is legally insufficient to disbar this respondent on account of an offense alleged to have been committed about twelve years ago.

The order must be *reversed, and it is so ordered.*