Francis J. CHARLTON, Appellant,

v.

FEDERAL TRADE COMMISSION.

No. 74–1571.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 21, 1975.

Decided March 10, 1976.

Henry J. Cappello, Washington, D. C., for appellant.

Albert H. Turkus, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin, Peter R. Reilly and David T. Stitt, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before TAMM, LEVENTHAL and ROBINSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

Circuit Judge TAMM dissents from the foregoing opinion.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This appeal tenders a variety of objections to an order of the Federal Trade Commission reprimanding Francis J. Charlton, a member of its bar, and suspending him from practice before the Commission for one year.[1] On Charlton's ensuing challenge in the District Court, summary judgment was rendered in favor of the order.[2] We find, upon examination of the administrative record, that the Commission utilized an erroneous standard in measuring the evidence that led it to take disciplinary action. So, without reaching any other issue now pressed, we reverse the summary judgment and remand the case to the District Court with instructions to vacate the Commission's order and direct it to reconsider the evidence conformably with this opinion.

I

For nearly eight years, Charlton, a member of the Massachusetts and New York bars, was employed as a Commission attorney. After rising to the position of Chief of the Division of Food and Drug Advertising, he resigned to join the legal staff of General Foods Corporation. Less than three years later, he stood accused of transmitting to his employer a confidential Commission document describing evidence gathered in an ongoing investigation of breakfast cereal companies, including General Foods.[3]

Charlton admits that he received the document from a recently-resigned Commission attorney and passed it on to his supervisor at General Foods. Charlton denies, however, that at the time he had knowledge of the contents of the document, and on that basis he vigorously protested his innocence. Thus emerging was a critical issue as to Charlton's credibility in light of the circumstantial import of other evidence presented to the Commission. No purpose useful to treatment of our immediate problem could be served by detailing the Commission's factual findings with reference to the charge. A sketch of the significant procedural events, however, is necessary to put the problem in proper context.

The Commission's handling of the incident began on an informal note. General

1. *Francis J. Charlton*, No. 129–8 (F.T.C. Sept. 18, 1973) (unreported).

2. *Charlton v. FTC*, Civ. No. 1926–73 (D.D.C. Apr. 4, 1974).

3. The Commission had issued a formal complaint charging manufacturers of ready-to-eat breakfast cereals, among them General Foods, with unfair and anticompetitive business practices violative of § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1970). *Kellogg Co.*, No. 8883 (F.T.C. Apr. 25, 1972).

Foods promptly notified the Commission of Charlton's transmittal of the document.[4] The Commission's chairman then referred the matter to the Department of Justice which, after investigation, concluded that there had been no violation of federal criminal law.[5] Some months later, the Commission honored Charlton's request for a hearing[6] by issuing an order requiring him to show cause why disciplinary action, including disbarment, should not be taken.[7] At the hearing, Charlton was represented by counsel and testified extensively in his own behalf.

In due course, the Commission announced its decision.[8] In its view, "[d]isciplinary proceedings against attorneys charged with improper conduct are inquisitorial rather than adversary in form and are corrective rather than punitive in purpose."[9] The Commission also felt that "[p]rocedurally, the task of the relevant tribunal is to use the simplest and most direct means of fairly determining, in the circumstances of the particular case, whether the alleged improper conduct has in fact taken place."[10] And, the Commission continued,

[t]he procedural requirements here are that (1) the accused attorney be given notice of charges, with an opportunity to be heard, and (2) the disciplinary order, if any, be based upon substantial evidence of record.[11] "Substantial evidence" means neither "preponderance" of the evidence nor that required to show guilt "beyond a reasonable doubt." It is, rather, " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' . . . .. This is something less than the weight of the evidence and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ."[12]

Applying that standard, the Commission concluded that "Charlton should have known and did know that the document he transmitted to the General Foods Corporation . . . was a confidential intra-agency document of a privileged nature and that his transmittal to that private firm was an improper act that reflected adversely on his fitness to practice before this agency."[13] On that evaluation of the evi-

---

**4.** Very shortly thereafter, General Foods also discharged Charlton and his supervisor.

**5.** See 15 U.S.C. § 50, 18 U.S.C. § 641 (1970).

**6.** The Commission takes the position that "[t]here is generally no occasion to challenge an attorney's fitness to practice before an agency such as this until he actually attempts to appear before it and his qualifications are challenged." *Francis J. Charlton, supra* note 1, at 5 n. 4.

**7.** The order was issued pursuant to the Commission's practice rules in relevant part providing:

    (1) All attorneys practicing before the Commission shall conform to the standards of ethical conduct required of practitioners in the courts of the United States and by the bars of which the attorneys are members.

    (2) If for good cause shown, the Commission shall be of the opinion that any attorney is not conforming to such standards or that he has been otherwise guilty of conduct warranting disciplinary action, the Commission may issue an order requiring such attorney to show cause why he should not be suspended or disbarred from practice before the

Commission. The alleged offender shall be granted due opportunity to be heard in his own defense and may be represented by counsel. Thereafter, if warranted by the facts, the Commission may issue against the attorney an order of reprimand, suspension, or disbarment.

16 C.F.R. § 4.1(4)(d) (1975).

**8.** *Francis J. Charlton, supra* note 1.

**9.** *Id.* at 20.

**10.** *Id.*

**11.** We omit the Commission's footnote at this point.

**12.** *Francis J. Charlton, supra* note 1, at 20–21, quoting *Consolo v. FMC*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 140 (1966), in turn quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126, 140 (1938) (citations and footnotes omitted).

**13.** *Francis J. Charlton*, No. 129–8 (F.T.C., order of Sept. 18, 1973).

dence, the Commission reprimanded Charlton and imposed a one-year suspension from practice before the Commission, but immediately reinstated him as a member of its bar.[14]

Charlton then came to the District Court in an effort to set aside the Commission's decision and order. The Commission moved for summary judgment on the administrative record, and the court granted the motion.[15] Charlton's appeal then brought the case here.

## II

We perceive one error which, all else aside, necessitates administrative reconsideration of the evidence. The crux of the difficulty is the Commission's use of a totally incorrect standard of proof in passing on Charlton's blameworthiness. It follows that, however Charlton might fare on his other contentions, the Commission's present disciplinary order could not be left standing.

The privilege of practicing law "is not 'a matter of grace and favor' "; [16] on the contrary, as quite recently recorded, "we have always viewed an attorney's license to practice as a 'right' which cannot lightly or capriciously be taken from him." [17] We have, too, remained advertent [18] to the Supreme Court's admonition that the power to withdraw that right "ought always to be exercised with great caution; and ought never to be exercised except in clear cases of misconduct, which affect the standing and character of the party as an attorney." [19] And contrary to the Commission's concept,[20] disciplinary proceedings "are adversary proceedings of a quasi-criminal nature," [21] and "[d]isbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer." [22]

Not surprisingly, then, it has become well settled that the charging party has the burden of proving that the charged attorney is no longer worthy of his office.[23] It

14. The Commission was constrained "to temper justice with mercy," *Francis J. Charlton, supra* note 1, at 24, and dated the suspension from May 17, 1972, when the incident first came to the Commission's attention. *Id.* at 25. Since the one-year suspension period terminated prior to the Commission's disciplinary order on September 18, 1973, Charlton was eligible to practice before the Commission immediately.

15. *Charlton v. FTC, supra* note 2.

16. *Willner v. Committee on Character & Fitness*, 373 U.S. 96, 102, 83 S.Ct. 1175, 1179–1180, 10 L.Ed.2d 224, 228 (1963), quoting *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 379, 18 L.Ed. 366, 370 (1867).

17. *Kivitz v. SEC*, 154 U.S.App.D.C. 372, 378, 475 F.2d 956, 962 (1973).

18. See *In re Adriaans*, 28 App.D.C. 515, 524 (1907); *Dorsey v. Kingsland*, 84 U.S.App.D.C. 264, 266, 173 F.2d 405, 407, *rev'd on other grounds*, 338 U.S. 318, 70 S.Ct. 123, 94 L.Ed. 123 (1949).

19. *Ex parte Wall*, 107 U.S. 265, 288, 2 S.Ct. 569, 589, 27 L.Ed. 552, 561 (1883).

20. See text *supra* at note 9.

21. *In re Ruffalo*, 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122 (1968). And while we agree with the Commission on the

desirability of "the simplest and most direct means of fairly determining" disciplinary charges, see text *supra* at note 9, "[d]isbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer [and] [h]e is accordingly entitled to procedural due process . . . ." *Id.* See also *Theard v. United States*, 354 U.S. 278, 282, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342, 1345 (1957); *In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682, 694 (1948); *Selling v. Radford*, 243 U.S. 46, 51, 37 S.Ct. 377, 379, 61 L.Ed. 585, 588 (1917); *Committee on Professional Ethics & Grievances v. Johnson*, 477 F.2d 169, 173 (3d Cir. 1971); *In re Echeles*, 430 F.2d 347, 350 (7th Cir. 1970).

22. *In re Ruffalo, supra* note 21, 290 U.S. at 550, 88 S.Ct. at 1226, 20 L.Ed.2d at 122. See also *Spevack v. Klein*, 385 U.S. 511, 514–516, 87 S.Ct. 625, 627–629, 17 L.Ed.2d 574, 577–578 (1967).

23. *Board of Comm'rs of Alabama State Bar v. Jones*, 291 Ala. 371, 281 So.2d 267, 274 (1973); *State ex rel. Florida Bar v. Grant*, 85 So.2d 232, 238 (Fla.1956); *In re Brown*, 389 Ill. 516, 59 N.E.2d 855, 858, 157 A.L.R. 604 (1945); *In re Witherow*, 226 Minn. 58, 32 N.W.2d 176, 177 (1948); *In re Feltman*, 51 N.J. 27, 237 A.2d 473, 474 (1968); *State v. Bomer*, 179 Tenn. 67, 162 S.W.2d 515, 520, *cert. denied*, 318 U.S. 771, 63 S.Ct. 764, 87 L.Ed. 1141 (1942).

was in the definition of that burden—in the degree of proof required—that the Commission faltered grievously. Its decision on disciplinary action was, in its words, to "be based upon substantial evidence of record."[24] "Substantial evidence," the Commission said, was not "the 'preponderance' of the evidence";[25] but "something less than the weight of the evidence";[26] it was, the Commission declared, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] In adopting that formulation as the criterion by which Charlton's conduct was to be gauged, the Commission hopelessly confused two legal canons designed to serve entirely distinct purposes.

■ To be sure, on judicial review of agency action, administrative findings of fact must be sustained when supported by substantial evidence on the record considered as a whole.[28] But that rule implicates only the reviewing court; the yard-

stick by which the agency itself is to initially ascertain the facts is something else again.[29] We need not pause to elaborate on the differing norms for treatment of the evidence in administrative and reviewing tribunals, respectively.[30] It suffices for present purposes simply to recall that in American law a preponderance of the evidence is rock bottom at the factfinding level of civil litigation.[31] Nowhere in our jurisprudence have we discerned acceptance of a standard of proof tolerating "something less than the weight of the evidence."[32]

■ Disciplinary proceedings against attorneys do not involve any departure from the orthodox rule governing resolution of civil evidentiary contests. Almost seventy years ago, this court declared that the "charge should be supported by a preponderance of satisfactory evidence. The case should be clear and free from doubt."[33] The same view, though variously articulated[34] is the touchstone of judicial decisions

24. See text *supra* at note 12.

25. See text *supra* at note 12.

26. See text *supra* at note 12.

27. See text *supra* at note 12.

28. See Federal Trade Commission Act, § 5, as amended, 15 U.S.C. § 45(c) (1970); Administrative Procedure Act § 10, 5 U.S.C. § 706 (1970). See also *NLRB v. Brown*, 380 U.S. 278, 292, 85 S.Ct. 980, 988, 13 L.Ed.2d 839, 849 (1965); *United States v. Carlo Bianchi Co.*, 373 U.S. 709, 715–718, 83 S.Ct. 1409, 1413–1415, 10 L.Ed.2d 652, 657–660 (1963); *SEC v. Chenery Corp.*, 332 U.S. 194, 207–209, 67 S.Ct. 1575, 1582–1583, 91 L.Ed. 1995, 2005–2006 (1947); *Wheatley v. Adler*, 132 U.S.App.D.C. 177, 180, 407 F.2d 307, 310 (*en banc* 1968); *Braniff Airways, Inc. v. CAB*, 126 U.S.App.D.C. 399, 412, 379 F.2d 453, 456 (1967); *American Trucking Ass'ns v. FCC*, 126 U.S.App.D.C. 236, 249, 377 F.2d 121, 134 (1966), *cert. denied*, 386 U.S. 943, 87 S.Ct. 973, 17 L.Ed.2d 874 (1967).

29. "Except as statutes otherwise provide, the proponent of a rule or order shall have the burden of proof." Administrative Procedure Act § 7(c), 5 U.S.C. § 556(d) (1970).

30. See generally 4 K. Davis, Administrative Law §§ 29.01–29.11 (1958).

31. See, *e.g.*, the numerous cases collected in 9 J. Wigmore, Evidence, § 2498 at 325–326 n. 1

(3d ed. 1940), Supp.1975 at 118–119 n. 1. Sometimes the standard is expressed in somewhat varying phraseology, but the meaning remains substantially equivalent. *Id.* § 2498 at 325–327.

32. See text *supra* at note 12.

33. *In re Adriaans, supra* note 18, 28 App.D.C. at 524. See also *Dorsey v. Kingsland, supra* note 18, 84 U.S.App.D.C. at 265–266, 173 F.2d at 406–407.

34. For example, "clear preponderance" of the evidence, *In re Hertz*, 139 Minn. 504, 166 N.W. 397, 408 (1918); *State v. Gudmundsen*, 145 Neb. 324, 16 N.W.2d 474, 476 (1944); *In re Little*, 40 Wash.2d 421, 244 P.2d 255, 260 (1953); *In re Hendricks*, 155 W.Va. 516, 185 S.E.2d 336, 342 (1971); "clear and convincing evidence" *Medoff v. State Bar of California*, 71 Cal.2d 535, 78 Cal.Rptr. 696, 455 P.2d 800, 810 (1969); *Bar Assoc. of Baltimore City v. Marshall*, 269 Md. 510, 307 A.2d 677, 681 (1973); *State Board v. Dodge*, 93 Minn. 160, 100 N.W. 684, 689 (1904); *In re Otterness*, 181 Minn. 254, 232 N.W. 318, 319, 73 A.L.R. 1319 (1930); *In re Martin*, 67 N.Mex. 276, 354 P.2d 995, 998 (1960); "clearly established" and similar expressions, *Bodisco v. State Bar of California*, 58 Cal.2d 495, 24 Cal.Rptr. 835, 374 P.2d 803, 805 (1962); *Gordon v. Clinkscales*, 215 Ga. 843, 114 S.E.2d 15, 21 (1960); *People v. Kerker*, 315 Ill. 572, 146 N.E. 439 (1925); *In re Lemisch*, 321 Pa. 110, 184 A. 72, 74 (1936).

across the Nation;[35] the bare minimum for a finding of misconduct is the greater convincing power of the evidence.[36] That the proceeding is administrative rather than judicial does not diminish this wholesome demand,[37] and the requirement should not have been relaxed in the case at bar.

We are unable to detect from the administrative record whether Charlton fell heir to the Commission's "substantial evidence" aberration because of some form of inadvertence, or rather because the Commission consciously felt that it was legally sound. Whatever the reason, the course of action now needed is clear. We reverse the District Court's summary judgment against Charlton and remand the case for further proceedings. The District Court will vacate the Commission's disciplinary order and will, in turn, remand to the Commission with instructions that it reconsider the evidence and redetermine the charge by application of the preponderance-of-the-evidence rule. We do not suggest that an additional evidentiary presentation is entailed; the Commission may well find it feasible to predicate its new decision on the record in its present state. And it goes without saying that we intimate no view as to what that decision should be. The District Court

should also retain jurisdiction of the case pending completion of the Commission's activities on remand.

With this disposition, there is no occasion to consider other arguments which Charlton has advanced on this appeal. Of course, should he be dissatisfied with the outcome on remand, he may again travel the path of judicial review.

*Reversed and remanded.*

---

**35.** *Hurst v. Bar Rules Comm.*, 202 Ark. 1101, 155 S.W.2d 697, 701 (1941); *In re Trask*, 46 Hawaii 404, 380 P.2d 751, 755–756 (1963); *In re Posler*, 390 Mich. 581, 213 N.W.2d 133 (1973); *In re Krehel*, 419 Pa. 86, 213 A.2d 375, 376–377 (1965); *In re Wright*, 131 Vt. 473, 310 A.2d 1, 9–10 (1973).

**36.** See the case-collection cited *supra* note 31. In concluding that substantial evidence of record suffices to underpin disciplinary action by an agency against a member of its bar, the Commission relied upon seven decisions, only two of which touched in any way on the quantum of proof required at the hearing stage. In *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), the question was *whether a state's denial of the* opportunity to qualify for the practice of law, on grounds of the applicant's prior arrests, use of aliases and membership in the Communist Party, deprived him of due process of law. In *Goldsmith v. United States Bd. of Tax Appeals*, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926), the issue was whether admission to practice as a certified public accountant before the Board of Tax Appeals could be refused after an ex

parte investigation without notice of and hearing on the charges upon which the refusal was based. *Kivitz v. SEC, supra* note 17, a review by this court of an agency disciplinary proceeding, does not discuss the standard of proof required at the hearing level; the evidence was held to be legally insufficient to support any disciplinary action whatever. And see note 17 *supra* and accompanying text. *Consolidated Edison Co. v. NLRB, supra* note 12, was a review of a hearing on unfair labor practices, and *Consolo v. FMC, supra* note 12, a review of a hearing on reparation awards. None of these cases was even remotely concerned with the question we now face. In *Ex parte Wall, supra* note 19, numerous issues were raised with respect to a disbarment proceeding, but none as to the caliber of proof essential. And see note 19 *supra* and accompanying text. And in *Dorsey v. Kingsland, supra* note 18, this court, in direct opposition to the Commission's holding in this case, held that the proper standard is a preponderance of the evidence.

**37.** See, *e.g., Kivitz v. SEC, supra* note 17; *Dorsey v. Kingsland, supra* note 18.