Leslie D. WILLIS, Appellant,

v.

Dr. P. J. CICCONE, Appellee.

No. 74–1294.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 18, 1974.

Decided Nov. 15, 1974.

Leslie D. Willis, pro se.

Bert C. Hurn, U. S. Atty., Kansas City, Mo., filed motion for remand of cause for further consideration.

Before GIBSON, Chief Judge, and LAY and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

This is an appeal from a denial of injunctive relief sought in a petition for habeas corpus. The petitioner Willis was a prisoner at the United States Medical Center for Federal Prisoners at Springfield, Missouri. In his habeas petition he alleged that prison authorities had placed him in punitive isolation on the basis of a false disciplinary report and after a hearing which denied him various safeguards of procedural due process. He also charged that he was being denied access to the courts and that his freedom to associate with other prisoners was being abridged because of his race.

Pursuant to a local procedural rule then in force in the United States District Court for the Western District of Missouri, Willis' petition was processed by a magistrate who held an evidentiary hearing and entered findings of fact and conclusions of law with a recommendation that some of the requested relief be granted and that some be denied. Under the rule, the petitioner could seek a de novo review of the magistrate's findings by the district judge. Willis sought this review but the district judge adopted the findings and recommendations of the magistrate and entered judgment accordingly. Willis then filed this appeal contending that the magistrate was without authority to hold the evidentiary hearing.

The Director of the Medical Center, Dr. P. J. Ciccone, through his counsel the United States Attorney, has filed a motion in this court seeking a remand for the purpose of a new hearing before the district court in view of the holding in Wingo v. Wedding, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974), that magistrates lack authority to hold evidentiary hearings in habeas cases. This court has followed this remand procedure in Williams v. Ciccone, No. 74–1320, and McFadden v. Ciccone, No. 74–1245. For the reasons which follow, however, we find a remand is not neces-

sary and affirm the denial of the writs by the district court.

This case, along with Proffitt v. Ciccone, 506 F.2d 1020, and Frazier v. Ciccone, 506 F.2d 1022, raises substantial questions regarding the scope of the writ of habeas corpus as well as the propriety of certain procedures followed by the district court in processing such petitions. In view of the increasing number of habeas corpus actions being filed, and what we perceive to be a basic misunderstanding by both federal and state prisoners of the availability of the writ for redressing prisoner grievances relating to the conditions of their confinement, these questions are important ones.

To avoid further abuse of the writ and hopefully to obviate some of the unnecessary procedural time and paper work undertaken by district courts, we think it useful to briefly review both the substantive claims for which habeas relief is available and the procedural guidelines to be followed with prisoner petitions.

■ Habeas corpus was originally viewed by this circuit, and several others, as an inappropriate method for challenging prison conditions. *See, e.g.,* cases cited in Cates v. Ciccone, 422 F.2d 926 (8th Cir. 1970). This restrictive view was premised primarily upon the same belief that gave rise to the more general "hands off" doctrine, that is, that prisoner complaints relating to conditions of confinement could only be addressed to those prison authorities who had responsibility for those conditions. *See, e.g.,* Harris v. Settle, 322 F.2d 908 (8th Cir. 1963). As the scope of federal habeas corpus expanded to include review of constitutional deficiencies in both state and federal convictions, the Supreme Court also recognized § 1983 of the Civil Rights Act as a proper vehicle for state prisoners challenging conditions of confinement which were in violation of their federal constitutional rights.[1]

Federal prisoners, of course, could have no remedy under § 1983 because of the absence of state action. The only recourse for federal prisoners desiring to challenge unconstitutional conditions in their confinement was the extraordinary remedy of habeas corpus. The basic inequity of providing a remedy for state prisoners while denying it to federal prisoners led to a reassessment of those cases which had held that habeas relief was unavailable in such circumstances with the result that now it is generally acknowledged that habeas corpus is a proper vehicle for any prisoner, state or federal, to challenge unconstitutional actions of prison officials. *See* Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974); Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

■ Contrary to the view evidenced by many prisoner petitions, however, not every aspect of prison discipline justifies review in federal court. The Supreme Court has observed that, since habeas corpus is an extraordinary remedy, "its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate." Hensley v. Municipal Court, 411 U.S. 345, 351, 93 S.Ct. 1571, 1575, 36 L.Ed.2d 294 (1973). In the context of challenges to prison conditions or the actions of prison authori-

---

1. A significant problem arose over whether the federal courts could require a state prisoner to exhaust his state remedies when he labeled the case habeas corpus, even though if the pleadings were cast in terms of § 1983 it could not exact the same exhaustion requirement. *Cf.* Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). Thereafter the Supreme Court in Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct.

1827, 36 L.Ed.2d 235 (1973), set forth definitive guidelines recognizing that suits by state prisoners for money damages and declaratory relief were cognizable under § 1983, but claims which related to loss of good time and punitive isolation went to the "core" of habeas corpus and could only be recognized in that light. *Id.* 411 U.S. at 500, 93 S.Ct. 1827, 36 L.Ed.2d 235.

ties, we believe this means two things: (1) that habeas corpus is limited to claims involving the deprivation of substantial rights,[2] and (2) that even where such claims are present, it is available, except in the most unusual circumstances, only after administrative procedures which provide a real possibility for relief have been exhausted.[3]

### Exhaustion of Administrative Remedies

Administrative procedures can, where available, provide an adequate and often the most *expeditious* review of prisoner grievances. Federal prison administrative grievance procedures must be viewed in this light. We hold that if grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court. This requirement of exhaustion for federal prisoners has been recognized by several circuits and we endorse their view. Paden v. United States, 430 F.2d 882 (5th Cir. 1970); Light v. United States, 430 F.2d 932 (5th Cir. 1970); Quick v. Thompkins, 425 F.2d 260 (5th Cir. 1970); Green v. United States, 283 F.2d 687 (3d Cir. 1960). The extraordinary nature of the writ requires this. It should not be resorted to until other more conventional remedies have failed.

When proper grievance procedures exist, their utilization benefits the prisoner, the prison authorities and the courts. If such procedures are given a fair chance to succeed, not only will the prisoner receive expeditious relief when he is entitled to it, the administrative burden processing federal suits places upon prison authorities will greatly decrease as well.[4]

### Procedures in District Court

We turn now to a consideration of district court procedure as it relates to claims asserted by federal prisoners. We observed initially that while prisoners are entitled to a plenary evidentiary hearing when they state a claim which merits it, only certain claims merit such a hearing. Before a hearing is required, the petition must allege a harm resulting from the deprivation of some basic federal constitutional right. Furthermore, conclusory pleading is not sufficient. Facts must be stated which, if true, would justify relief. Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971). Habeas petitions cannot seek de novo review of the facts involved in a disciplinary proceeding. A federal district judge or magistrate can never serve as final arbiter on factual disputes over the occurrence of rule infractions within a prison. In this case, as in the other two

---

2. This was recently illustrated when the Supreme Court observed in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L. Ed.2d 935 (1974), that the due process required in prison disciplinary procedures which affect loss of good time or which may result in punitive isolation is not necessary when lesser penalties, such as the loss of privileges, are threatened.

3. Our holding concerning exhaustion of state and federal administrative remedies is confined to cases involving habeas corpus. It is well settled that state prisoners may generally seek money damages or declaratory relief concerning prison discipline under § 1983 without exhaustion of state remedies. However, as was observed in Wolff v. McDonnell and repeated here, it may well benefit prisoners to seek administrative relief first since this may be both a more expeditious and ad-

vantageous source of relief from unlawful action. Nevertheless, where a prisoner utilizes § 1983 as the means to attack the conditions of his confinement, the very nature of the suit and the rules governing its procedure remove it from any judicial requirement of exhaustion. *See* Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

4. The State Court Administrator of Maryland reports that since 1971 when legislation created a grievance commission to hear prisoner complaints, prisoner petitions have decreased 66%. Maryland Inmate Grievance Commission, Profile No. 3, American Bar Association Resource Center on Correctional Law and Legal Services. *See also* South Carolina Correctional Ombudsman, Profile No. 2, *id.*; Minnesota Correctional Ombudsman, Profile No. 1, *id.*

cases mentioned, the magistrate conducted lengthy evidentiary hearings and made extensive findings of facts on the events surrounding prison disciplinary actions. In effect, the facts presented in the disciplinary action were heard again by the magistrate.[5] Such a procedure misapprehends the scope of habeas corpus. The only issue which should concern a federal court in such instance is whether the prisoner has been aggrieved by a denial of a fundamental constitutional right. A hearing is not required if one is not necessary to a determination on that issue. Often one is not. Habeas corpus is designed to provide a prompt and efficacious remedy. Peyton v. Rowe, 391 U.S. 54, 88 S.Ct.

1549, 20 L.Ed.2d 426 (1968). It should be kept in mind that the very nature of the writ allows it to "cut through barriers of form and procedural mazes." Harris v. Nelson, 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969). Time-consuming procedures and pleadings should be kept to a minimum. The Supreme Court has observed:

Flexible provision is made for taking evidence by oral testimony, by deposition, or upon affidavit and written interrogatory. 28 U.S.C. § 2246. Cf. §§ 2245, 2254(e). The court shall "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. But with respect to methods

---

5. The magistrate's findings, as adopted by the district court, cover 10 of the 36 pages of his report. We set forth the magistrate's findings concerning one of several disciplinaries reviewed at the time of the evidentiary hearing:

1. On November 9, 1973, David Roper, Clothing Services Assistant in the Medical Center, while conducting a search of petitioner's locker, in petitioner's presence, found therein clothes which did not belong to the petitioner; an amount of clothes in excess of that which it was permissible for petitioner to have under the Medical Center regulations; one pair of shorts from which the prison numbers had been cut out; 3 pair of shorts with other prisoners' numbers in them; and the following items which were either not to be possessed by him or in excess of the permissible quantity: 4 pillow cases, 2 sheets, 4 wash cloths, 1 fatigue jacket, 7 handerkerchiefs, 8 tee shirts, 11 bath towels, and 2 pairs of khaki pants.

2. Therefore, the same date, Mr. Roper filed a disciplinary report charging petitioner with "destroying, altering, or damaging government property, or the property of another person," and "possession of property belonging to another person." In support of the charges, Mr. Roper stated the following particular facts:

"While checking with this inmate on a set of special shoes to be ordered I found he had in his possession the following which I picked up. 4 pillow cases, 2 sheets, 4 wash cloths, 1 fatigue jacket, 7 handkerchiefs, 8 T shirts, 11 bath towels, 2 pr. khaki pants, 4 pr. shorts, 1 marked #962, 1 marked #832, 1 marked #90, and 1 with the number cut out. This left him in his possession 4 pr. shorts, 4 pr. khaki

pants, 4 khaki shirts, 1 fatigue jacket, 1 handkerchief, 1 towel, 1 wash cloth, 1 T shirt, plus sheets and pillow case on his bed."

3. A copy of that disciplinary report was delivered to petitioner by Correctional officer Larry J. Eoff, at 9:45 a.m. on November 11, 1973.

4. Petitioner subsequently appeared before the prison disciplinary committee on November 14, 1973. There, the report of Mr. Roper was read to him and petitioner was given an opportunity to respond thereto. Petitioner stated:

"Yes Sir I had the towels the rest of the stuff belonged to another guy I was keeping for him. I did not destroy anything. This guy left them there and I pushed them under my bed. I was in the tub when they shook it down. I'm sayin[g] that I am aware there were clothes there. I deny that I altered anything."

The committee found that petitioner had committed the prohibited act as charged, basing their finding on petitioner's admission that "he had possession" and the report of Mr. Roper. The committee recommended the withholding of 10 days' statutory good time for the month of November.

5. In the hearing of the case at bar, petitioner denied that he had cut the numbers out of any clothing; that he had changed the numbers on any clothing; and stated that all the clothing he had bore his numbers. He admitted having excess towels, stating that he had intended them for the use of other persons. He stated that any excess of articles that he had were being possessed by him for another prisoner, whom he did not know and who simply left the items on his locker one day.

for securing facts where necessary to accomplish the objective of the proceedings Congress has been largely silent. Clearly, in these circumstances, the habeas corpus jurisdiction and the duty to exercise it being present, the courts may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage.

Harris v. Nelson, *supra* at 299, 89 S.Ct. at 1090.

In many recurring instances other fact-finding procedures available to the district court are superior, and thus preferable, to the evidentiary hearing. The possibilities are aptly illustrated by this case.

In his habeas petition Willis presented grievances which are representative of those often contained in such petitions. First, he alleged a denial of procedural due process in relation to a disciplinary proceeding leading to punitive isolation, loss of good time and the denial of prison privileges. Second, he alleged a denial of due process in that disciplinary actions were based on false charges. Third, he alleged a denial of an independent constitutional right by reason of certain prison rules and the conduct of prison authorities.

An evidentiary hearing was unnecessary on the basis of these allegations in this case.

*Due Process*

The allegation that procedural due process was denied in a prison disciplinary proceeding should no longer require the district court, except perhaps in an extreme case, to hold an evidentiary hearing.[6] One was clearly superfluous here. The magistrate heard evidence on factual disputes over whether the petitioner had stolen food from the prison cafeteria, whether he had in fact been found "out of bounds," whether he had been in possession of property belonging to another, and whether he had committed homosexual acts. The hearing, however, did not focus on the federal issue, that is, whether procedural due process had been afforded in the disciplinary proceedings resulting from these alleged occurrences. Had that been recognized as the basic issue at the hearing, the records of the disciplinary proceedings themselves, if they were available, might have provided sufficient evidence of what procedures were followed. A response by prison authorities through affidavit detailing the procedures followed could have obviated the necessity for a hearing. The testimony in the record compiled by the magistrate, when viewed as an oral affidavit, clearly establishes that the petitioner was afforded procedural due process and that a remand for the purposes of a hearing would serve no useful purpose.

The disciplinary proceedings which are challenged here occurred prior to the decision in Wolff v. McDonnell. While the due process requirements delineated there are expressly made non-retroactive, we have recently observed that this does not prevent us from reviewing past proceedings to determine whether they were compatible with basic principles of procedural fairness.[7] Wilwording v. Swenson, 502 F.2d 844 (8th Cir. 1974). We interpret the decision in *Wolff* to mean simply that the specific requirements of due process set out there

6. With the definitive guidelines of minimal due process requirements now set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the claims concerning denial of procedural due process in prison disciplinaries should now disappear. We assume all prison authorities will establish disciplinary procedures meeting at least the basic requirements set forth there. Pursuant to a Policy Statement (No. 2001.-6) issued February 14, 1974, the United States Bureau of Prisons established an Administrative Remedy Procedure throughout the federal system, effective April 1, 1974.

7. Prior to *Wolff* this court had required some basic procedural due process in prison disciplinary proceedings. *See, e. g.*, Dodson v. Haugh, 473 F.2d 689 (8th Cir. 1973); Remmers v. Brewer, 475 F.2d 52 (8th Cir. 1973).

are not deserving of retroactive application. This does not mean that in the absence of some showing of essential fairness in pre-*Wolff* disciplinary procedures, this court cannot intervene. Intervention is not warranted here, however. The record shows that prior notice, although not in exact conformity with *Wolff,* was given. The petitioner was informed of the evidence to be presented and a hearing was held. His primary complaint is that he was not afforded the right to cross-examine the witnesses against him. *Wolff,* however, held that cross-examination of witnesses is not an essential element of due process in such hearings. We find from the record sufficient trustworthiness in the questioned prison proceedings and there exists no necessity for a remand for further hearings under Wingo v. Wedding, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974).[8]

### False Charges

■ We turn to Willis' allegation that some disciplinary actions taken against him were based on false reports. Once again we question whether evidentiary hearings, except in extreme cases, are necessitated by such a claim where there has been compliance by prison officials with procedural due process. One of the requirements of *Wolff* is that the prisoner be given a written statement of the factfinder's reasons for the disciplinary action. Where procedural due process has been afforded in the prison proceeding, this statement will provide prison officials with documentary proof demonstrating the factual basis of any action by the prison disciplinary board. A result can be reached at the pleading stage. As we have noted previously, the role of the district court is not to afford a de novo review of the disciplinary board's factual findings. The district court should simply determine whether the decision was supported by some facts. The sole and only issue of constitutional substance is whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by the prison officials. Wilwording v. Swenson, 502 F.2d 844 (8th Cir., 1974); McDonnell v. Wolff, 483 F.2d 1059 (8th Cir. 1973), rev'd on other grounds, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Otherwise the federal court would assume the task of retrying all prison disciplinary disputes. In the instant case the response by the prison authorities, as substantiated by the testimony taken by the magistrate (which we again construe as an oral affidavit), shows there was a basis in fact to the charges made and a remand is unnecessary.

### Infringement of Fundamental Rights

■ This, then, brings us to the third general type of grievance found in prisoner complaints, *i. e.,* the allegation that a fundamental constitutional right of the prisoner has been infringed. When such a claim is made in a petition for a writ of habeas corpus, strict judicial scrutiny is required in reviewing that claim. Preiser v. Rodriguez, 411 U.S. 475, 498–499, 93 S.Ct. 1827, 36 L.Ed.2d 235 (1973).

This type of claim often involves the alleged denial of a prisoner's First Amendment rights, *see* Remmers v. Brewer, 494 F.2d 1277 (8th Cir. 1974); Moore v. Ciccone, 459 F.2d 574 (8th Cir. 1972), or an alleged violation of the Eighth Amendment through cruel and inhuman punishment. *See* Finney v. Arkansas Board of Correction, 505 F.2d 194 (8th Cir. 1974). Allegations of this type will more frequently require an evidentiary hearing in federal court. *Cf.* Dodson v. Haugh, 473 F.2d 689 (8th Cir. 1973).[9] However, where the allegation

---

8. The district court, based on the magistrate's findings which the record supports, found no notice given to the prisoner for two other disciplinary charges and therefore ordered good time reinstated. No appeal was taken by the government from these rulings, and we need not pass on this part of the court's order.

9. Where a prisoner alleges some infringement of a fundamental constitutional right,

in itself does not set forth a claim as a matter of law, Proffitt v. Ciccone, 506 F.2d 1020, filed this date, or may be upheld as a matter of law, Mattingly v. Ciccone, 503 F.2d 502 (8th Cir. 1974), no evidentiary hearing is necessary.

 In the instant case Willis' petition might be viewed as alleging a denial of First Amendment rights. He says he, a black, was harassed for associating with white inmates and further, that he was abused by a ward officer for filing a prior habeas action concerning improper medical treatment. Willis' petition and his own testimony show that his first allegation is based on one of the correctional officers asking him "when he began associating with whites." Without more proof of harassment and without condoning such interrogation, we hold these facts fail to present a claim sufficient to justify habeas relief. Nor does the evidence support Willis' second claim that he was unduly harassed for filing legal process. Obviously if true this states a proper claim for relief, since free access to the courts may never be inhibited by prison authorities. However, Willis' allegation rests solely on the fact that after he filed a writ his ward officer filed three incident reports on him. The record shows that the ward officer had an independent factual basis for each of these charges. Without some further showing, there is not sufficient evidence to justify habeas relief. Finally, the record shows that Willis has now been transferred to another prison and the alleged harassment at Springfield has in any event ceased. These claims are therefore moot.

 In conclusion, we therefore hold that prisoner petitions which seek a writ of habeas corpus and relief from prison conditions must allege (1) a substantial infringement of a constitutional right, (2) a factual statement, which if true would entitle the prisoner to relief, and (3) exhaustion of prison grievance procedures. We further suggest that the petitions be processed in as expeditious and summary a manner as possible and that evidentiary hearings be held only when a factual dispute arises as to whether the prisoner's fundamental rights are being infringed. Where the issue is one of due process in a disciplinary action, the district court should concern itself with the question of whether procedural due process has been afforded and whether there exists a factual basis for the discipline invoked. Generally this evidence should be received in the form of documentary proof without the necessity of an evidentiary hearing. Finally, in compliance with Wingo v. Wedding, 418 U.S. 461, 94 S. Ct. 2842, 41 L.Ed.2d 879 (1974), the magistrate is not permitted to hold any evidentiary hearing or make any adjudicatory findings.[10]

 The principles restated here must not be misunderstood. They do not warrant the denial of an evidentiary hearing when the pleadings clearly require one. On the other hand, we think it clear that once proper and fair grievance machinery is applied on the administrative level, prisoner petitions for habeas corpus may be summarily reviewed in ascertaining whether there has been a denial of substantive federal rights.[11]

Judgment affirmed.

the district court, assuming a factual dispute exists, must make an independent finding of fact. When such an allegation is made the findings made by any prison administrative boards are not controlling.

10. As set forth in the statute, the magistrate may assist the district court by making recommendations to the court as to whether an evidentiary hearing is necessary. *See* Wingo v. Wedding, *supra*.

11. Our analysis as to the restricted nature of federal claims which may now arise is equally applicable in weighing the necessity of evidentiary trials under § 1983. Where documentary evidence demonstrates that prison disciplinary proceedings have complied with the due process requirements under *Wolff* and demonstrate a factual basis for the claim, summary judgment may be the appropriate remedy obviating trial.