Alfred A. FRANCO, Appellant,

v.

Edward MORELAND; William Breeding;
Aaron Mensey; Eldridge Jackson;
Vince Vaughn; Kevin Ryan; Fred
West, Appellees.

No. 84–2059.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1985.

Decided Nov. 18, 1986.

Howard B. Eisenberg, Carbondale, Ill., for appellant.

Donald J. Weyerich, Clayton, Mo., for appellees.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Alfred A. Franco appeals from a final judgment entered in the District Court for the Eastern District of Missouri upon a jury verdict on his § 1983 action against named correctional officers and supervisors at the St. Louis County Jail (jail). Franco alleged that while he was a pretrial detainee in the jail for about eighteen months awaiting trial for homicide, correctional officers beat him and placed him in an isolation unit without procedural due process. He also charged that supervisory jail officials failed to adequately supervise and train the correctional officers.

After a lengthy trial, the jury returned verdicts in favor of the correctional and the supervisory officers on the respective assault and failure to train and supervise charges. The jury also found in favor of appellees on appellant's due process claim.

For reversal of the district court's judgment entered on the verdicts, appellant argues that the district court erred in the (1) admission of evidence about appellant's misconduct, (2) admission of evidence of appellant's witnesses' criminal records, and (3) submission of incorrect jury instructions. For the reasons discussed below, we reverse the district court's judgment on appellant's procedural due process claim.

While appellant, who has a history of mental illness, was confined in the St. Louis County jail as a pretrial detainee, he was sent to and examined at Fulton State Hospital. Based on the evaluation, the psychiatric consultant recommended that appellant be closely guarded because of his suicidal and homicidal tendencies. While confined at the county jail, appellant was placed in administrative segregation isolation periodically and for several weeks at a time.

Appellant charges that appellees placed him in isolation for punishment. Conversely, appellees contend that appellant was placed in isolation not for punishment, but because of his violent and disruptive conduct toward other inmates and jail personnel. Thus, according to appellees, they placed appellant in isolation because he was a danger to himself and others.

Appellees further assert that the physical confrontation (described by appellant as unconstitutional assaults and beatings) occurred because of the need to deter appellant from engaging in this disruptive and aggressive misconduct. Without a doubt, evidence of this misconduct was relevant on the assault charges. While no argument to the contrary is made by appellant on this point, appellant does argue that evidence of his alleged misconduct improperly influenced the verdict on his due process claim. Because of the final disposition we make of this claim, we do not decide this claim of error.

Appellant also argues that improper cross-examination of his witnesses about their criminal records influenced the jury verdicts. Appellant does not argue and seems to concede that evidence of his witnesses' prior criminal convictions is admissible. Rather, he argues that the district court abused its discretion: first, by permitting testimony of his witnesses' criminal records on cross-examination by defense counsel after the witnesses had admitted their convictions on direct examination; and secondly, by allowing defense counsel to show not only the nature, number, date and time of the convictions but also the sentences imposed.

The trial court is accorded a wide discretion in determining whether evidence is repetitious and whether to limit cross-examination. Generally, the court's discretion under trial conditions on the reception or rejection of evidence is very broad and rarely will be reversed. Likewise appellate courts have long given trial judges wide latitude in conducting the cross-examination of witnesses. Here we find neither an abuse of discretion nor any prejudice; therefore, we rule both points against appellant.

Finally, we address the pivotal issue in this case which is appellant's procedural due process claim. To refute all allegations of error pertaining to appellant's procedural due process claim, appellees argue forcefully that (1) St. Louis County Jail Directive 301, "Special Instructions for Segregated Cells" (County Directive 301) created no protectible liberty interest; and (2) the district court's modified instructions were correct statements of the law.

First, we examine appellees' argument that County Directive 301 is merely a discretionary guideline, which does not create a protectible liberty interest. A liberty interest protected by the due process clause of the fourteenth amendment " 'may arise from two sources—the Due Process Clause itself and the laws of the States.' " In *Clark v. Brewer*, 776 F.2d 226, 230 (8th Cir.1985) (*Clark*), citing *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983), we noted, however, that a prisoner has no due process-based liberty interest in not being placed in administrative segregation. *Hewitt v. Helms*, 459 U.S. at 466–68, 103 S.Ct. at 868–70. "A state-created liberty interest arises in situations where the state has placed substantial limitations on the exercise of official discretion." *Clark*, 776 F.2d at 230. A liberty interest created by the state may be " 'found not only in a state's statutes or administrative code, but also in official policy pronouncements that are intended to guide the exercise of discretion.' " *Id., citing Green v. Black*, 755 F.2d 687, 688 (8th Cir.1985).

In *Clark* this court held that the Iowa Department of Corrections policy statements created a liberty interest in remaining in the general prison population. *Id.* at 230–31. We said that an important factor to be considered in determining whether a liberty interest is created is whether the statute, regulation or policy statement in question contains language of a mandatory nature, e.g., shall, will, must. *Id* at 230. We held that the Iowa Department of Corrections employees' manual and related regulations of the prison set forth particularized substantive criteria for determining whether an inmate may be properly placed in close management. The manual also contained mandatory language which limited the discretion of officials to retain inmates in close management. *Id.* at 231.

In the present case County Directive 301 establishes guidelines as to when a jail inmate may be placed in administrative segregation and also defines the length and conditions of that segregation. The directive states, in part, that "[a]dministrative *segregation* will be employed when an inmate's continued presence in the general population poses a serious threat to himself, staff, other inmates or the security of the institution." The directive further requires that inmates placed in administrative segregation *be given written notice of* any institutional rule or statute that they have violated, that *their cases be reviewed* every seven days by the reclassification and discipline committee, and that they *be visited by medical personnel* daily. These guidelines place a substantial limitation on the discretion of the jail officials to place persons in administrative segregation. We hold, therefore, that these guidelines create a protectible liberty interest which may not be taken away without procedural due process.

Appellees argue that the district court's modification of appellant's instructions was correct because County Directive 301 did not mandate a hearing. We reject this argument because once a liberty interest has been found, federal law, not state law, determines what constitutes adequate

procedural due process. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985). Determination of what process is due requires an analysis of the governmental and private or individual interests that are affected. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). A predeprivation hearing is generally required; however, there is an exception to this requirement when the state must act immediately to protect others, e.g. when it is necessary to *immediately* remove a prisoner from the general prison or jail population to prevent injury to him or to others.[1] Even where a predeprivation hearing is required, "something less" than a full evidentiary hearing has been held sufficient in some cases. *Cleveland Board of Education v. Loudermill,* 105 S.Ct. at 1493; *see Riggins v. Board of Regents,* 790 F.2d 707, 711 (8th Cir.1986).

■ Appellees' final argument in support of the district court's modified instruction and against appellant's proffered instruction is without merit. The district court's modified instructions, which were submitted to the jury, ignored entirely the *Hewitt* minimum standards as to what process is due an inmate who is to be placed in administrative segregation. The whole thrust of the district court's instruction allowed recovery for appellant, if, but only if, appellees placed him in administrative segregation for punishment. In other words, if appellees' actions were laudable or justified, appellant could not recover. Neither justification nor good motive is a defense when a liberty interest gives one a right to notice of charges and an opportunity to explain. The proffered instructions of appellant substantially required a jury finding of the essential elements of the procedural due process claim, i.e., appellees knowingly placed appellant in administrative segregation without a hearing prior to placement and without a meaningful periodic review and directly damaged appellant thereby.

In the present case the instructions given were not only a misstatement of the law but also a misdirection. Hence, the judgment entered upon the verdict cannot stand. Because appellees neither contend nor argue that they at any time gave appellant notice of the charges and an opportunity to explain, we reverse and remand the cause to the district court with instructions to enter judgment in favor of appellant on his procedural due process claim, grant nominal damages, and allow attorney's fees.

---

**1.** It is important to distinguish between the two usual situations, which give rise to a prisoner being transferred to administrative segregation. In one situation, the prisoner is a danger to himself and others and actions must be taken to immediately protect him or others. An example is the prisoner who assaults and batters others or attempts to kill himself. In such a situation, the state's interest outweighs the prisoner's right to any predeprivation process; post-deprivation process is adequate.

In the second situation, no urgency or emergency exists at the time the prisoner is transferred to administrative segregation. An example is the transfer of a prisoner to administrative segregation because of the violation of prison rules and regulations. In these instances, the prisoner must be afforded notice and hearing before a transfer to administrative segregation. *Patterson v. Coughlin,* 761 F.2d 886, 891–93 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).