George GOFF, Appellee/Cross–Appellant,

v.

Steve DAILEY, Superintendent of Clarinda; Richard Huckins, Correctional Officer, Appellants/Cross–Appellees.

Nos. 92–1951, 92–2019.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 18, 1992.

Decided April 29, 1993.

Rehearing and Rehearing En Banc Denied June 15, 1993.

Layne M. Lindebak, Des Moines, IA, argued (Bonnie J. Campbell and Layne M. Lindebak, on the brief) for appellant/cross-appellee.

Philip B. Mears, Iowa City, Iowa, argued, for appellee/cross-appellant.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

George Goff, an Iowa prisoner, brought this 42 U.S.C. § 1983 action alleging that Superintendent Steve Dailey and Correctional Officer Richard Huckins, both Iowa prison officials, violated his constitutional rights through the prison disciplinary process. Dailey and Huckins appeal the district court's finding that the prison disciplinary committee denied Goff due process of law by using an evidentiary standard below a preponderance of the evidence for its factual determinations.[1] Goff cross appeals the district court's denial of relief on his access to the courts and First Amendment claims. We reverse the district court's determination that use of the "some evidence" standard at the prison disciplinary hearing violated Goff's right to due process, and affirm the district court's decision that the prison officials did not deny Goff access to the courts or violate his First Amendment rights.

## I. BACKGROUND

On the evening of August 3, 1987, Goff and other inmates were watching television in the recreation room at the Clarinda Correctional Facility in Clarinda, Iowa. One of the inmates asked Huckins if he would allow the group to watch television longer than the usual viewing hours that evening. When Huckins denied this request, Goff remarked to another inmate that Huckins "must not have gotten any pussy before work." Huckins heard the comment and asked Goff to repeat it, which Goff did. Huckins then told Goff that he was on report for making the statement.

Goff argued with Huckins, contending that under the First Amendment he could say anything he liked to another inmate, as long as his comment was not directed at a correctional officer. Huckins refused to capitulate to this reasoning, however, and stood by his decision to file a report charging Goff with a violation of the prison regulation that proscribes verbal abuse. Goff indicated that if Huckins filed the report, he would take Huckins to court. Goff then requested a grievance form, which he took back to his cell. A short time later, Goff returned to the recreation room and told Huckins that he was the wrong person to be "fucking with." Goff continued, saying if "[y]ou don't think I'm the wrong person to be fucking with, I'll go back to Fort Madison right now."[2]

Huckins filed a disciplinary report detailing Goff's statements and charging that Goff violated three prison rules that pro-

---

**1.** The district court awarded Goff one dollar in nominal damages based on its finding that Goff experienced no harm or actual damages as a result of the constitutional violation.

**2.** Dailey testified that he interpreted this statement as a veiled threat that Goff might involve himself in dangerous conduct without regard to the resultant likelihood of being transferred to Fort Madison. Fort Madison is a far more restrictive institution than Clarinda.

scribe: (1) verbal abuse; (2) threats or intimidation; and (3) obstructive or disruptive conduct. After a hearing, the disciplinary committee found Goff guilty of violating all three rules.[3] Dailey affirmed the disciplinary committee's decision on appeal. Goff then brought this action in federal court.

## II. DISCUSSION

### A. First Amendment

■ Goff argues that his First Amendment rights were violated because he was punished for comments made to another prisoner about Huckins. Goff does not deny making the statement, but he denies directing the remark to Huckins. According to Goff, the First Amendment shields him from punishment under the prison's verbal abuse rule unless he intended that Huckins overhear the remark. Since the disciplinary committee made no findings about whether Goff wanted Huckins to hear his statement, Goff contends that his punishment was unconstitutional.

Assuming for the sake of argument that the First Amendment protects speech like that at issue here, although we doubt such proposition, the prison officials still did not violate Goff's rights under the Constitution. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). This relaxed standard of scrutiny is necessary if " 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.' " *Id.* (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977)). Huckins testified that he asked Goff to repeat his statement in order to give Goff a chance to retract it. Goff, however, elected to repeat the statement in a confronta-

tional fashion. We agree with the district court's conclusion that the prison has a legitimate penological interest in punishing inmates for mocking and challenging correctional officers by making crude personal statements about them in a recreation room full of other inmates. Accordingly, Goff was not deprived of his First Amendment rights when the disciplinary committee found that he violated the rule against verbal abuse.

### B. Access to the Courts

■ Goff next contends that the prison abridged his right of access to the courts because he was punished for threatening to sue Huckins if Huckins filed a disciplinary report. It is clear that prison officials cannot punish an inmate for filing legal actions. *Sanders v. St. Louis County*, 724 F.2d 665, 666 (8th Cir.1983). The disciplinary committee found that Goff violated the rule against threats or intimidation "by threatening [Correctional Officer] Huckins with court action." On appeal, however, Dailey's opinion emphasized that his main reason for affirming the decision was Goff's statement that he was unconcerned about the possibility of being transferred to Fort Madison, which Dailey considered to be a veiled threat of physical violence.

The prison officials contend that they can constitutionally punish Goff for threatening legal action if his goal was to intimidate Huckins to keep from performing his duty. We find it unnecessary to address this issue because, as the district court found, Goff's statement that he was ready to return to Fort Madison independently supports punishment for threatening a correctional officer and clearly is not constitutionally protected. Although the disciplinary committee's decision did not discuss the Fort Madison statement, it was in the record before the committee and Dailey relied on this statement to affirm the decision. The district court correctly found that

**3.** The disciplinary committee sentenced Goff to three days of disciplinary detention and loss of sixteen days of good time. The sentence was suspended, however, and was never imposed. As a result of the disciplinary report, Goff's

security classification score, one factor used to determine an inmate's eligibility for the "outs" program at the Clarinda facility, was increased by two points.

viewing the whole record there was ample evidence to support punishment.

## C. Due Process

█ Finally, Goff argues that the prison officials violated his right to due process by using "some evidence" as the standard of proof for its factual determinations at the disciplinary hearing. Goff contends that the Due Process Clause required the disciplinary committee to find him guilty by at least a preponderance of the evidence, and possibly by clear and convincing evidence, before imposing punishment.

The Supreme Court has previously held that in prison discipline cases, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Superintendent, Massachusetts Correctional Inst. v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). In reaching this conclusion, the Court cited with approval the holding of a panel of this court that "[t]he sole and only issue of constitutional substance is whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by the prison officials." *Willis v. Ciccone,* 506 F.2d 1011, 1018 (8th Cir.1974) (cited in *Hill,* 472 U.S. at 456, 105 S.Ct. at 2774; *see also Ryan v. Sargent,* 969 F.2d 638, 640 (8th Cir.1992) ("there must be 'some evidence' in the record" to satisfy due process of law), *cert. denied,* —— U.S. ——, 113 S.Ct. 1000, 122 L.Ed.2d 150 (1993); *Engel v.*

*Wendl,* 921 F.2d 148, 150 (8th Cir.1990) ("due process is violated unless prison disciplinary committee members possess 'some evidence' before finding an inmate guilty of breaking institution rules").

Goff acknowledges these precedents, but contends that they state only the standard of appellate review, and provide no guidance for determining the burden of proof required by the Due Process Clause at the initial disciplinary hearing. *See Brown v. Fauver,* 819 F.2d 395, 399 n. 4 (3d Cir.1987) (dicta).[4] Goff contends that while federal courts use the "some evidence" standard on review to determine whether constitutionally sufficient evidence supports a prison disciplinary decision, the Due Process Clause requires that the prison disciplinary committee base its decision on at least a preponderance of the evidence.[5] We disagree.

██ Inmates are entitled to due process of law and prison authorities must provide an inmate with the appropriate level of due process before depriving him of a protected liberty interest.[6] *See Wolff v. McDonnell,* 418 U.S. 539, 555–58, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). "The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action." *Hill,* 472 U.S. at 454, 105 S.Ct. at 2773. Not all deprivations of interests protected by the Fourteenth Amendment require full evidentiary hearings before im-

---

4. The dissent supplies two district court cases to bolster the this position. *See infra* at 1443. Neither case cited by the dissent represents an in depth review of this issue and, interestingly, one of them bases its holding on *Goff v. Dailey,* the case that we reverse today. *Spalding v. Matthews,* No. 89–3417–RDR, 1992 WL 363653, at *2 n. 2 (D.Kan. Nov. 6, 1992).

5. As the district court correctly noted, the phrase "standard of appellate review" is misleading in this context because federal courts do not sit in appellate review over state prison disciplinary decisions. The district court sits to decide whether the disciplinary committee violated the inmate's due process rights. *See Goff v. Dailey,* 789 F.Supp. 978, 981 n. 1 (S.D.Iowa 1992). The real issue in this case is whether there is a difference between the burden of proof required by procedural due process at the

disciplinary hearing, and the sufficiency of the evidence standard employed by the federal courts as mandated by the Due Process Clause. *See Viens v. Daniels,* 871 F.2d 1328, 1336 n. 2 (7th Cir.1989).

6. Although Goff's sentence was suspended, the district court found that the disciplinary report increased Goff's security classification score, which is one factor used in determining an inmate's eligibility for the "outs" program at Clarinda. The prison officials argue for the first time on appeal that Goff's interest in his security classification score is not a protected liberty interest. Since the prison officials did not raise the issue below, we proceed on the assumption that the Due Process Clause applies to the security classification score involved here. *See Hill,* 472 U.S. at 453, 105 S.Ct. at 2773.

partial decision-makers using a preponderance of the evidence or higher standard.

A school principal, for example, may constitutionally deprive a student of protected interests after telling the student what he is accused of doing and "informally discuss[ing] the alleged misconduct with the student minutes after it has occurred." *Goss v. Lopez*, 419 U.S. 565, 582, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975). An employer may constitutionally terminate a tenured public employee for cause after giving the employee notice of the charges, an explanation of the evidence, and an opportunity for the employee to present his side of the story. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The government may constitutionally deprive individuals of real and personal property upon establishing probable cause for forfeiture.[7] *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). Goff's contention that a preponderance of the evidence is the lowest burden of proof that satisfies due process for deprivation of any protected interest is simply incorrect. Therefore, we must examine the requirements of due process in the particular circumstances of prison disciplinary decisions.

The Supreme Court held in *Hill* that prison inmates have an interest in assuring that disciplinary actions that infringe on their protected liberties are not imposed arbitrarily. *Hill*, 472 U.S. at 454, 105 S.Ct. at 2773. This interest must be balanced with the government's interest in "assuring the safety of inmates and prisoners [and] avoiding burdensome administrative requirements that might be susceptible to manipulation." *Id.* at 455, 105 S.Ct. at 2774. *Hill* makes manifest that the balance of interests in prison disciplinary cases leads to minimal scrutiny of prison decisions by the federal courts.

Goff contends that his constitutional right to a hearing before being disciplined, *see Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979, would be meaningless if prison authorities could subject him to discipline on less than a preponderance of the evidence. This argument presumes that *Wolff* contemplated a full fact-finding hearing in every prison discipline case. As previously discussed, many constitutional deprivations of protected interests are predicated on no more than notice and an opportunity for the claimant to tell the decisionmaker his side of the story. No more is required here.[8] Due process does not entitle prison inmates to a hearing at which they are on equal footing with the prison authorities. Inmates are certainly not constitutionally entitled to the level playing field created by a fully adversarial proceeding which uses a preponderance of the evidence standard.[9] *See Santosky v. Kramer*, 455 U.S. 745, 755, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982) (prepon-

---

**7.** In *United States v. $12,390.00*, 956 F.2d 801 (8th Cir.1992), the dissent's argument against the constitutionality of such a scheme began from the proposition that "[p]rivate ownership of property holds a special place in our society ... as it does in most democratic societies." *Id.* at 807. Goff does not allege the deprivation of any similar interest in this case. Indeed, he is a convicted felon incarcerated within a system where it is sometimes necessary to attenuate constitutional rights enjoyed in a more unfettered way by those not similarly situated. *See Safley*, 482 U.S. at 89, 107 S.Ct. at 2261–62.

**8.** The dissent argues, based on a strained reading of the Iowa Department of Corrections Policy and Procedure, that Iowa regulations demand a fact-finding hearing. *See infra* at 1445. Even if we were to accept that Iowa regulations necessitate a factual finding, these regulations do not expand the requirements of due process under the federal constitution.

**9.** The dissent suggests that prison regulations in the federal system and in Minnesota provide a preponderance standard, indicating that other prisons in this circuit consider "some evidence" to be an inadequate standard. Of course, federal prison regulations and Minnesota prison regulations are not binding on Iowa prisons. These regulations may provide more protection than the Constitution requires in their jurisdictions, but they cannot raise the standard of due process under the Constitution. Moreover, we note that the federal regulation cited by the dissent provides for a disciplinary decision "based on at least some facts." 28 C.F.R. § 541.15(f) (1992). Under the federal scheme, inmates are not entitled to a preponderance standard unless there is conflicting evidence. In this case, Goff did not provide any conflicting evidence to the disciplinary committee.

derance of the evidence standard reflects society's minimal concern with the outcome and conclusion that the litigants should share the risk of error equally).

*Wolff* explicitly leaves the depth and breadth of disciplinary hearings to the "[p]rison officials [who] must have the necessary discretion to keep the hearing within reasonable limits." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980: The inmate's liberty interests "must be accommodated in the distinctive setting of a prison, where disciplinary proceedings 'take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so.'"[10] *Hill,* 472 U.S. at 454, 105 S.Ct. at 2773 (quoting *Wolff,* 418 U.S. at 561, 94 S.Ct. at 2977). The disciplinary hearing must offer the inmate an opportunity to explain his actions or otherwise defend himself before the disciplinary authority, but it does not require a full evidentiary battle between the prosecuting prison officials and the defending inmate. Inmates do not have a right to counsel or the unlimited right to call witnesses and present documentary evidence at disciplinary hearings. *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980. The day-to-day exigencies of running a prison often require prison officials to deprive inmates of protected liberties based on only "some evidence." *See e.g., Ryan,* 969 F.2d at 641 (prison authorities may constitutionally place inmates in administrative segregation when there is "some evidence" of an escape plot).

■ We find that Goff's constitutional interest in a non-arbitrary result is fully satisfied if the disciplinary committee bases its decision on at least "some evidence" against him. *See Hill,* 472 U.S. at 455, 105 S.Ct. at 2774; *Ciccone,* 506 F.2d at 1018.[11] To uniformly demand a more exacting evidentiary standard in prison discipline cases would unduly burden prison administration and possibly threaten institutional interests.[12] Accordingly, we hold that due process is satisfied if the disciplinary committee bases its decision on "some evidence" in the record.

In this case, the prison disciplinary committee found "some evidence" in the record to support the charges that Goff violated three prison rules. On review of the record, we find ample evidence to support the disciplinary panel's determination. Therefore, we find that the prison officials did not violate Goff's due process rights and reverse the decision of the district court to award Goff one dollar in nominal damages.

## III. CONCLUSION

For the reasons discussed above, we affirm the district court's decision that the prison officials did not deny Goff access to the courts or violate his First Amendment rights, and reverse the district court's conclusion that the prison officials violated Goff's due process rights.

HEANEY, Senior Circuit Judge, dissenting in part.

This appeal presents an issue of first impression in the courts of appeals: can a prison disciplinary board find an inmate guilty of violating a prison rule or regulation on something less than a preponder-

---

10. The dissent would have us meddle with the considered judgment of the prison officials regarding procedures for the effective and just discipline of inmates. As we have previously stated, the balance struck by prison administrators between the rights of inmates and the demands of the institution is entitled to great deference. *Timm v. Gunter,* 917 F.2d 1093, 1099 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2807, 115 L.Ed.2d 979 (1991).

11. Of course, where the facts recited by the disciplinary authority to support its decision are so unreliable that it would be arbitrary to impose punishment based on the record, the minimal constitutional standard is not satisfied.

*See, e.g., Freitas v. Auger,* 837 F.2d 806, 810 (8th Cir.1988) ("[a] bald assertion by an unidentified person, without more, cannot constitute some evidence of guilt"). It is not too burdensome to demand that prison authorities base their decisions on at least some evidence.

12. We do not imply that prisons are constitutionally required to find guilt if there is some evidence of guilt in the record. Prisons are free to employ a preponderance of the evidence or even a higher standard in disciplinary proceedings. However, we cannot find that a decision based on some evidence is arbitrary and, thus, unconstitutional.

ance of the evidence?[1] The only circuit to have addressed this issue, albeit in dicta, was the Third, in which it indicated that

> [i]f [the appellant] is correct in his assertion that [the prison regulation] provides for a burden of proof lower than a preponderance of the evidence, then it follows that an inmate can be punished for acts which he in all probability did not commit. We have grave doubts about the constitutionality of such a regulation. Also if [the appellant]'s interpretation of the regulation is correct, then the district court was incorrect in relying on *Superintendent v. Hill.* In *Hill,* the Court did not address whether the Constitution requires a particular burden of proof in prison disciplinary proceedings. *Hill* only spoke to issues involving standards of appellate review.

*Brown v. Fauver,* 819 F.2d 395, 399 n. 4 (3d Cir.1987) (citation omitted). Distinguishing between the standard of proof and the standard of review posed no difficulty for the district court in its thorough and scholarly determination of the instant case. *See Goff v. Dailey,* 789 F.Supp. 978, 982–83 (S.D.Iowa 1992); *see also Spalding v. Matthews,* No. 89–3417–RDR, 1992 WL 363653, at *2 n. 2 (D.Kan. Nov. 6, 1992) (distinguishing between standard of proof and standard of review and determining that proper standard of proof in prison disciplinary hearings is preponderance of the evidence); *Young v. Coughlin,* No. CIV–87–877E, 1989 WL 132012, at *2 (W.D.N.Y. Oct. 25, 1989) (distinguishing between standard of proof and standard of review in prison disciplinary hearings); Gerald L. Neuman, *The Constitutional Requirement of "Some Evidence,"* 25 San Diego L.Rev. 631, 664 (1988) ("The 'some evidence' requirement is a standard of review, not a procedural requirement applicable to the original tribunal. . . . A tribunal that announces that it has 'some evidence' before it and therefore can proceed to deprive an individual of liberty or property is not fulfilling a constitutionally imposed duty.") Yet despite the district court's careful exposition, the majority of this court treats the two as essentially identical, citing only standard of review cases as authority for its assertion that prison disciplinary boards may employ a lesser standard of proof than a preponderance of the evidence. Because the majority's assertion has neither precedential nor academic support, and because it portends gross violations of inmates' constitutional guarantees of due process, I respectfully dissent.

The majority does not dispute that prison inmates are entitled to due process of law before they may be deprived of protected liberty interests. *Supra* at 1440 (citing *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). Though exigent circumstances may entitle prison authorities to deprive an inmate of protected liberties without a prior disciplinary hearing, as the majority contends, the inmate retains the constitutional right to a hearing once those exigencies have passed. *See Franco v. Moreland,* 805 F.2d 798, 801 & n. 1 (8th Cir.1986).[2] That school administrators are not constitutionally obligated to provide the same level of process to students is irrelevant. Due process requires that a hearing take place before inmates are disciplined through deprivation of a protected interest, and the only remaining

---

1. That this issue would not have reached a court of appeals previously is not surprising. Those who assert constitutional deprivations by prison disciplinary boards regularly argue that the given board determination was not supported by the evidence, a claim that falls under the "some evidence" standard of review. This appeal raises the additional issue that the board applied a constitutionally deficient standard of proof, that of "some evidence." Should prison boards have previously required less than a preponderance of the evidence in making their findings, they have not surprisingly failed to make that point explicit. Additionally, as discussed *infra,* none of the prison regulations in effect in this circuit expressly allow disciplinary boards to rely on anything less than a preponderance of the evidence.

2. This circuit's decision in *Ryan v. Sargent,* 969 F.2d 638 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1000, 122 L.Ed.2d 150 (1993), is not inconsistent with *Franco. Ryan* was temporarily placed in administrative segregation when the warden received information from a confidential informant that Ryan's escape was imminent. Before being placed in permanent administrative segregation, Ryan received the required disciplinary hearing. *Id.* at 640.

question is what standard of proof must be employed in those hearings.

In *Santosky v. Kramer,* 455 U.S. 745, 754, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982), the Court indicated that the "determin[ation] whether a particular standard of proof in a particular proceeding satisfies due process" depends on "a straightforward consideration of the factors identified in [*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) ]." The Court identified three factors: "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *Santosky,* 455 U.S. at 754, 102 S.Ct. at 1394. Though the district court carefully examined these factors, *see Goff,* 789 F.Supp. at 983–84, the majority fails to do so.

The district court's analysis is straightforward and on the mark: the inmate's interest in not being erroneously disciplined is an important one; the risk of error with use of a "some evidence" standard of proof is high; and the state's interest in swift and certain punishment is not impeded by use of the preponderance standard of proof. *Id.* at 984. Additionally, the state has an interest in accurate determinations, for "neither the state nor the inmate has any valid interest in treating the innocent as though he were guilty." *United States ex rel. Miller v. Twomey,* 479 F.2d 701, 718 (7th Cir.1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974).

No application of the *Eldridge* and *Santosky* standards has resulted in adoption of less than a preponderance-of-the-evidence standard of proof. The *Santosky* Court determined that a clear-and-convincing standard of proof was required in cases of termination of parental rights, and in so doing it stated that "application of a 'fair preponderance of the evidence' standard indicates ... society's 'minimal concern with the outcome.' " *Santosky,* 455 U.S. at 755, 102 S.Ct. at 1395 (quoting *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979)).

Administrative factfinding occurs throughout our legal system, yet no examples can be cited in which a fact is "found" by less than a preponderance of the evidence.

> [I]n American law a preponderance of the evidence is rock bottom at the factfinding level of civil litigation. Nowhere in our jurisprudence have we discerned acceptance of a standard of proof tolerating "something less than the weight of the evidence."
>
> ... [T]he bare minimum for a finding of misconduct is the greater convincing power of the evidence. That the proceeding is administrative rather than judicial does not diminish this wholesome demand....

*Charlton v. FTC,* 543 F.2d 903, 907, 908 (D.C.Cir.1976) (footnotes omitted) (quoting *In re Adriaans,* 28 App.D.C. 515, 524 (1907)); *see also Sea Island Broadcasting Corp. v. FCC,* 627 F.2d 240, 243 (D.C.Cir.) ("the 'preponderance of evidence' standard is the traditional standard in civil and administrative proceedings"), *cert. denied,* 449 U.S. 834, 101 S.Ct. 105, 66 L.Ed.2d 39 (1980); *Collins Secs. Corp. v. SEC,* 562 F.2d 820, 823 (D.C.Cir.1977) (same); *Smyth v. Lubbers,* 398 F.Supp. 777, 799 (W.D.Mich.1975) ("[t]he application of any standard [of proof] lower than a 'preponderance of evidence' would have the effect of requiring the accused to prove his innocence").

Searches not only of "our jurisprudence," but of scholarly works as well yield the same result: "One can *never* prove a fact by something less than a preponderance of the evidence. Any view to the contrary is based on misunderstanding." 3 Kenneth Culp Davis, *Administrative Law Treatise* § 16.9, at 256 (2d ed. 1980); *see also* 4 Jacob A. Stein et al., *Administrative Law* § 24.03 (June 1987) (agency decisions are based on preponderance of the evidence unless a higher standard applies); Bernard Schwartz, *Administrative Law* § 7.9 (3d ed. 1991) (same).

The prison regulations in effect within this circuit at both the state and federal level appear to recognize this integral as-

**1445**

pect of factfinding, for not one of the sets of regulations provides for use of a "some evidence" standard. Federal regulations require that "[t]he Unit Discipline Committee shall consider all evidence presented at the hearing and shall make a decision based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence." 28 C.F.R. § 541.15(f) (1992).

Minnesota's regulations, which are governed by a federal court consent decree, require that a "finding of guilty ... be based on a majority vote of the members of the board, who must be convinced that the inmate's guilt is more probable than his innocence." *Inmate 24394 v. Schoen*, 363 F.Supp. 683, 687 (D.Minn.1973); *see also* Minnesota Department of Corrections, Inmate Discipline Regulations for Minnesota Correctional Facilities 7 (1988). Iowa's policy regarding disciplinary hearing procedures, which governs the hearing in this case, provides that after reviewing the available evidence, the disciplinary committee/administrative law judge shall "[e]xcuse the inmate and begin deliberations to determine whether the alleged rule violation(s), *in fact*, occurred." Iowa Department of Corrections, Division of Institutions, Department Policy and Procedure III(D)(9)(h) (effective April 1984) (emphasis added). As all legal and scholarly authority indicates that facts can only be found by a preponderance of the evidence, in order to satisfy Iowa's own regulations, the preponderance standard must be met. Any belief to the contrary is, as Professor Davis indicates, based on misunderstanding.

Under the approach adopted by the majority today, an inmate is now faced with proving his or her innocence. This proof of innocence must meet not simply a preponderance of the evidence, but some higher standard, perhaps clear-and-convincing evidence or even higher, for as long as some evidence exists of an accused inmate's guilt, the disciplinary board can judge the

inmate guilty, notwithstanding the weight of the evidence to the contrary.[3] Because such procedures in no way comport with the requirements of due process, I respectfully dissent from Part II.C. of the court's opinion.

---

**3.** As the author of the majority opinion said of the civil forfeiture statutes on another occasion, such "allocation of burdens and standards of proof requires that the claimant prove a negative, ... while the government must prove almost nothing. This creates a great risk of an erroneous, irreversible deprivation." *United States v. $12,390.00*, 956 F.2d 801, 811 (8th Cir. 1992) (Beam, J., dissenting in part).